UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JOEL ROSENFELD,<br><br>                    Plaintiff,<br><br>          v.<br><br>STEIN MART, INC., JAY STEIN, D. HUNT HAWKINS, MARYANNE MORIN, IRWIN COHEN, THOMAS L. COLE, TIMOTHY COST, LISA GALANTI, RICHARD L. SISISKY, and BURTON M. TANSKY,<br><br>                    Defendants. | Case No._____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Joel Rosenfeld ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against Stein Mart, Inc. ("Stein Mart" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Stein Mart will be acquired by Kingswood Capital Management, L.P. ("Kingswood"), through Kingswood's affiliates Stratosphere Holdco, LLC ("Parent"), and Stratosphere Merger Sub, Inc., a wholly-owned subsidiary of Parent ("Merger Sub") (the "Proposed Transaction").

2.      On January 31, 2020, Stein Mart issued a press release announcing that it had entered into an Agreement and Plan of Merger dated January 30, 2020 (the "Merger Agreement") to sell Stein Mart to Kingswood.  Under the terms of the Merger Agreement, each holder of Stein Mart Class A common stock will have the right to receive $0.90 in cash for each share of Stein Mart common stock they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $28.6 million.

3.      On March 2, 2020, Stein Mart filed a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Stein Mart stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the special committee of the Board's ("Special Committee") financial advisor, PJ Solomon Securities, LLC ("PJS"); (ii) the background of the Proposed Transaction; and (iii) PJS's and Moelis & Company's ("Moelis") potential conflicts of interest.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In short, unless remedied, Stein Mart's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Stein Mart's common stock trades on the NASDAQ Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Stein Mart.

9.      Defendant Stein Mart is a Florida corporation with its principal executive offices located at 1200 Riverplace Boulevard, Jacksonville, Florida 32207.  The Company is a national specialty off-price retailer offering designer and name-brand fashion apparel for men, women, and children, home décor, accessories and shoes at everyday discount prices.  Stein Mart's common stock trades on the NASDAQ Capital Market under the ticker symbol "SMRT."

10.      Defendant Jay Stein ("Stein") has been Chairman of the Board since 1989 and a director of the Company since 1968.  Defendant Stein also previously served as Chief Executive Officer ("CEO") of the Company from June 2013 to March 2016, interim CEO from September 2011 to June 2013, and CEO from 1990 to September 2001.

11.     Defendant D. Hunt Hawkins ("Hawkins") has been CEO of the Company since January 2017 and a director of the Company since 2016.  Defendant Hawkins has served in various executive roles at the Company since 1994.

12.     Defendant MaryAnne Morin ("Morin") has been President of the Company since February 2017 and a director of the Company since 2018.

13.     Defendant Irwin Cohen ("Cohen") has been a director of the Company since 2008.

14.     Defendant Thomas L. Cole ("Cole") has been a director of the Company since 2016.

15.     Defendant Timothy Cost ("Cost") has been a director of the Company since 2016.

16.     Defendant Lisa Galanti ("Galanti") has been a director of the Company since 2016.

17.     Defendant Richard L. Sisisky ("Sisisky") is lead director and has been a director of the Company since 2003.

18.     Defendant Burton M. Tansky ("Tansky") has been a director of the Company since 2014.

19.     Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

### OTHER RELEVANT ENTITIES

20.     Kingswood is a middle market private equity firm with its principal executive offices located at 11777 San Vicente Boulevard, Suite 650, Los Angeles California 90049.  Its primary business is the performance of investment management and advisory services.

21.     Parent is a Delaware limited liability company formed by Kingswood Stratosphere Investor, LLC, an affiliate of Kingswood.

22.     Merger Sub is a Florida corporation and an indirect wholly-owned subsidiary of Parent.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

23.     Begun in the early 1900s as a single store in Greenville, Mississippi, Stein Mart was organized in Mississippi in 1968 before merging into a Florida corporation in 1992.  The Company operated 287 stores in 30 states and an Ecommerce retail selling site as of February 2, 2019.  It is a national specialty off-price retailer offering designer and name-brand fashion apparel, home décor, accessories and shoes at everyday discount prices.   The Company's fashion assortment is driven primarily by seasonal fashion trends and a focus on name brand and designer merchandise complemented by a select program of private label and proprietary/exclusive merchandise.

24.     On November 20, 2019, Stein Mart announced its third quarter 2019 financial results.  Operating loss for the quarter was $9.6 million for 2019 compared to an operating loss of $13.1 million for 2018.  Net loss for the third quarter was $12.1 million or $0.25 per diluted share for 2019 compared to net loss of $16.3 million or $0.35 per diluted share for 2018.  Defendant Hawkins commented on the improved results, stating:

> We saw a marked improvement in our sales trend in the third quarter. Comparable sales improved 250 basis points from the first half of the year to essentially flat, driven by incremental sales from the launch of our Kids department and a double-digit increase in omni sales.  Our new fall initiatives are gaining traction and will continue to have a positive impact on our performance in the fourth quarter.

**The Proposed Transaction**

25.     On January 31, 2020, Stein Mart issued a press release announcing the Proposed Transaction.  The press release states, in relevant part:

> JACKSONVILLE, Fla., Jan. 31, 2020 (GLOBE NEWSWIRE) -- Stein Mart, Inc. (NASDAQ: SMRT) ("Stein Mart" or the "Company") today announced it has entered into a definitive merger agreement under which an affiliate of Kingswood Capital Management, L.P. ("Kingswood") will acquire all of the outstanding common stock of Stein Mart not already beneficially owned by affiliates of Jay

Stein, Stein Mart's former CEO and current Chairman of the Board of Directors, and related investors for $0.90 per share in cash. Upon closing, Stein Mart will become a privately held company and Stein Mart common stock will no longer be listed or traded on any public stock market.

The purchase price represents a premium of approximately 38% to Stein Mart's closing stock price on January 30, 2020, the last trading day prior to this announcement.

The transaction was unanimously approved by the Stein Mart Board of Directors (other than Mr. Stein), acting on the unanimous recommendation of a Special Committee of independent directors that was granted full authority to conduct a comprehensive strategic review and evaluate, and if warranted, negotiate an acquisition proposal.

"The Special Committee and its advisors conducted a thorough and independent process to review the Company's strategic alternatives and identify a transaction that would maximize shareholder value. We believe that this transaction is in the best interest of all Stein Mart stakeholders, including our many loyal employees," said Richard L. Sisisky, Stein Mart Board member and Chairman of the Special Committee.

The transaction will be financed by debt provided by Wells Fargo Bank, National Association and Pathlight Capital LP and by equity provided by affiliates of Kingswood.  As part of the transaction, an entity managed by Jay Stein will contribute its equity and, following the closing of the merger, will indirectly own one-third of Stein Mart after the closing.

The transaction, which is expected to close in the first half of calendar year 2020, is subject to approval by Stein Mart shareholders and the satisfaction of other customary closing conditions. The Stein Mart Board of Directors recommends that Stein Mart's shareholders vote to adopt and approve the merger agreement.

Stein Mart will file a Current Report on Form 8-K with the Securities and Exchange Commission (SEC), which will more fully describe the terms and conditions of the merger agreement and the proposed transaction.

**<u>Insiders' Interests in the Proposed Transaction</u>**

26.     Stein Mart insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Stein Mart.

27.     Notably, Stein Mart insiders stand to reap substantial financial benefits for securing the deal with Kingswood.  Pursuant to the Merger Agreement, all outstanding options, restricted stock units ("RSU"), and restricted stock awards will vest and convert into the right to receive the Merger Consideration.  The following tables summarize the value of the Company options and RSUs that Company insiders stand to receive:

| Name | Stock Options (#) | Value ($) | Time Vesting Restricted Stock/Units (#)(1) | Value ($) |
|---|---|---|---|---|
| **Directors** | | | | |
| Jay Stein | — | $— | — | $ |
| Irwin Cohen | — | | 7,112 | 6,401 |
| Thomas L. Cole | 4,000 | — | 7,112 | 6,401 |
| Timothy Cost | 4,000 | — | 7,112 | 6,401 |
| Lisa Galanti | 4,000 | — | 7,112 | 6,401 |
| Richard L. Sisisky | — | — | 7,112 | 6,401 |
| Burton M. Tansky | 5,748 | — | 7,112 | 6,401 |
| **Executive Officers** | | | | |
| D. Hunt Hawkins* | 801,631 | — | 133,334 | 120,001 |
| MaryAnne Morin* | 500,000 | — | 116,667 | 105,000 |
| James B. Brown | — | — | 66,667 | 60,000 |

**<u>The Proxy Statement Contains Material Misstatements or Omissions</u>**

28.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Stein Mart's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

29.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Special Committee's financial advisor, PJS; (ii) the background of the Proposed Transaction; and (iii) PJS's and Moelis's potential conflicts of interest.

***Material Omissions Concerning the Company's Financial Projections and PJS's Financial Analyses***

30.   The Proxy Statement omits material information regarding Company management's financial projections.

31.   For example, the Proxy Statement fails to disclose the following metrics over the projection period: (i) margins for gross profit, adjusted EBITDA and adjusted EBIT; (ii) comparable store sales, e-commerce and total comparable sales; (iii) growth rates for total revenue, adjusted EBITDA and adjusted EBIT; and (iv) leverage and interest coverage ratios.

32.   Additionally, the Proxy Statement omits material information regarding PJS's financial analyses.

33.   The Proxy Statement describes PJS's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of PJS's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Stein Mart's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on PJS's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

34.   The Proxy Statement fails to disclose the *Premiums Paid Analysis* performed by PJS and included in its fairness opinion.

35.   With respect to PJS's *Illustrative Discounted Cash Flow Analysis* based on the exit multiple method, the Proxy Statement fails to disclose: (i) projected terminal year adjusted EBITDA for the Company; (ii) the terminal values for the Company; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 9.5% to 11.5%; (iv) Stein Mart's adjusted net debt; and (v) the fully diluted shares of Company common stock as of January 27, 2020.

36.   With respect to PJS's *Illustrative Discounted Cash Flow Analysis* based on the

perpetuity growth method, the Proxy Statement fails to disclose: (i) the terminal year unlevered free cash flow of the Company; (ii) the terminal values for the Company; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 9.5% to 11.5%; (iv) Stein Mart's adjusted net debt; and (v) the fully diluted shares of Company common stock as of January 27, 2020.

37.     With respect to PJS's *Selected Publicly Traded Companies Analysis* and *Selected Precedent Transactions Analysis,* the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies and transactions analyzed by PJS, respectively.

38.     Without such undisclosed information, Stein Mart stockholders cannot evaluate for themselves whether the financial analyses performed by PJS were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which PJS's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

39.     The omission of this material information renders the statements in the "Opinion of PJ Solomon Securities, LLC" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

40.     The Proxy Statement omits material information concerning the background process leading to the Proposed Transaction.

41.     For example, the Proxy Statement sets forth that Stein Mart executed non-disclosure agreements with multiple interested parties including, five parties in January and

February 2018, seven capital providers in March 2018, nine asset-backed credit facility providers and two FILO term loan lenders in July 2018, and 16 parties in April 2019.  *See* Proxy Statement at 18-19, 21, 23.  Yet, the Proxy Statement fails to disclose whether the non-disclosure agreements executed by potential bidders include "don't-ask, don't-waive" ("DADW") standstill provisions that are presently precluding any of these parties from submitting a topping bid for the Company.

42.     The failure to disclose the existence of DADW provisions, creates the false impression that any of the potential buyers who entered into non-disclosure agreements could make a superior proposal for the Company.  If those non-disclosure agreements contain DADW provisions, then those potential buyers can only make a superior proposal by (i) breaching the non-disclosure agreement—since in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly; or by (ii) being released from the agreement, which if action has been done, is omitted from the Proxy Statement.

43.     Any reasonable Stein Mart stockholder would deem the fact that the most likely topping bidders for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

44.     Moreover, the Proxy Statement also fails to disclose the Special Committee's basis for adding defendant Cost to the Special Committee in September 2019, five months after PJS began contacting potential buyers in connection with the sale process and nearly two years after the Special Committee's formation.

45.     The Proxy Statement also sets forth that Moelis, on behalf of defendant Stein, had reached out to 30 potential equity partners regarding an acquisition of the Company, and that three parties expressed serious interest in such an acquisition.  *See id.* at 22.  The Proxy Statement, however, fails to disclose whether Kingswood was one of the three parties that expressed serious

interest in an acquisition of the Company to Moelis and if so, any discussions and negotiations that occurred between Moelis and Kingswood, including any proposals or indications of interest Kingswood provided to Moelis regarding an acquisition of the Company.

46.     The omission of this material information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning PJS's and Moelis's Potential Conflicts of Interest***

47.     The Proxy Statement fails to disclose material information concerning the conflicts of interest faced by PJS.

48.     The Proxy Statement sets forth:

> Pursuant to a letter agreement dated January 26, 2018 (as amended), the Special Committee engaged PJS to act as its financial advisor in connection with the merger. The engagement letter between the Special Committee and PJS provides for a transaction fee that is estimated, based on the information available as of the date of announcement of the merger agreement, approximately $2.6 million, a substantial portion of which is contingent upon the closing of the merger and a portion of which was payable upon the delivery by PJS of its oral opinion, as of January 29, 2020, and its oral opinion, subsequently confirmed in writing, as of January 30. 2020. In addition, the Company has agreed to reimburse PJS for its expenses and to indemnify PJS against certain liabilities arising out of its engagement by the Special Committee. PJS has not during the two years prior to the date of its opinion provided any financial advisory services to the Company, Parent, the Rollover Investor, Kingswood Capital, Jay Stein, or their respective affiliates or, in the case of Kingswood Capital, portfolio companies for which PJS received payment, in each case, *other than serving as financial advisor to the Special Committee in connection with the refinancing of the Company's asset-backed loan facility in September 2018* and other than having delivered an oral opinion on January 29, 2020 to the Special Committee as to the fairness to the shareholders (other than Parent, the Rollover Investor and their respective affiliates) from a financial point of view of the consideration to be paid to such shareholders pursuant to the merger agreement.

*Id.* at 48 (emphasis added).  The Proxy Statement, however, fails to specify the amount of PJS's fee that is contingent upon closing of the Proposed Transaction and the compensation PJS received

for serving as financial advisor to the Special Committee in connection with the refinancing of the Company's asset-backed loan facility in September 2018.

49.     Moreover, the Proxy Statement fails to disclose whether Moelis has provided any services for the Company, Board, and/or Special Committee in the past two years, and if so, the compensation Moelis received in connection with such services.

50.     The omission of this material information renders the statements in the "Opinion of PJ Solomon Securities, LLC" and "Background of the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

51.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Stein Mart will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

52.     Plaintiff repeats all previous allegations as if set forth in full.

53.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

54.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Special Committee's financial advisor, PJS, the sale process leading to the Proposed Transaction, and PJS's and Moelis' potential conflicts of interest.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

55.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

56.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

57.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of
### Section 20(a) of the Exchange Act

58.     Plaintiff repeats all previous allegations as if set forth in full.

59.     The Individual Defendants acted as controlling persons of Stein Mart within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Stein Mart, and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

60.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

62.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

63.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their

positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Stein Mart's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Stein Mart, and against defendants, as follows:

A.  Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Stein Mart stockholders;

B.  In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.  Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  March 24, 2020

WEISSLAW LLP

By _____

Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*